ALTENBERND, Judge.
James Stainfield appeals an order entered by the Public Employees Relations Commission (PERC) approving a hearing officer’s recommended order. These orders uphold the decision of the Department of Health and Rehabilitative Services (HRS) to discharge Mr. Stainfield for conduct unbecoming a public employee. We reverse because there is no competent, substantial evidence that Mr. Stainfield’s conduct “adversely affect[ed] the department’s ability to carry out its assigned mission.”
Mr. Stainfield was employed as a maintenance superintendent at the Gulf Coast Center in Fort Myers from March 17, 1989, until he was first discharged on November 16, 1993, for negligence and for allegedly falsifying records. Mr. Stainfield appealed this first dismissal. A hearing officer held evi-dentiary hearings in this first appeal on January 14 and February 1, 1994. On March 7, 1994, that hearing officer issued a recommended order finding that: (1) HRS had failed to prevail on a substantial portion of its charge, (2) the dismissal was too severe a sanction, and (3) Mr. Stainfield should receive a twenty-day suspension with back pay, attorneys’ fees, and costs of litigation.
PERC issued an order on April 12, 1994, approving these recommendations.
HRS did not appeal this ruling and did not prepare the paperwork to reinstate Mr. Stainfield until after May 10, 1994. HRS never advised Mr. Stainfield to return to work. Instead, in late April, HRS sent him a letter indicating that it planned to dismiss him on May 10,1994, for a first occurrence of conduct unbecoming a public employee. A second letter was mailed to him on May 6, advising that he was dismissed effective May 13, 1994. This second dismissal is the subject of this appeal.
Mr. Stainfield’s alleged conduct unbecoming a public employee occurred after his first dismissal on November 16, 1993, and before his reinstatement. HRS’s personnel handbook defines “conduct unbecoming a public employee” to include “conduct, whether on or off the job, that adversely affects the employee’s ability to continue to perform his current job, or which adversely affects the department’s ability to carry out its assigned mission.” For purposes of this appeal, we assume without deciding that a public employee’s conduct can be regulated while the employee is discharged but seeking a reinstatement. However, a discharged employee can engage in no conduct “on” the job. Likewise, it is difficult to apply the test proscribing conduct adversely affecting Mr. Stainfield’s ability to “continue” to perform his “current” job, when the conduct occurred during a discharge. Thus, Mr. Stainfield’s conduct must have adversely affected HRS’s ability to carry out its assigned mission.
The record clearly reveals that Mr. Stain-field did not enjoy the full support of the people he supervised. They knew of his first appeal. Thinking that the matter could be swayed by public opinion rather than evidence, many of the employees signed a petition on January 11, 1994, stating that they would be unwilling to work under his supervision if Mr. Stainfield were reinstated. The petition stated that he was unprofessional, unreliable, that he showed favoritism, and that it was “very difficult to work under his tyronnous [sic] and sometimes degrading ways.” Several employees wrote “to whom it *254 may concern” letters providing individual negative assessments of Mr. Stainfield.
Mr. Stainfield testified that he was “shocked” by these actions. Once in mid-January 1994, he called one of his former workers at home. He did not threaten this worker, but suggested that another worker had claimed that this worker had instigated the petition.
In late February, Mr. Stainfield called a. second worker at home. He “more or less” said that if he were reinstated he would seek to discharge those employees who signed the petition and participated in the negative letter-writing campaign against him. These people did not include this second worker. Mr. Stainfield also discussed with him HRS purchases that had occurred over the last five years which Mr. Stainfield believed to be a waste of money. Mr. Stainfield hoped that a local politician could help him solve the problems at Gulf Coast Center.
He talked to a third employee on approximately six occasions away from work. Although Mr. Stainfield also told him that some of the employees were “going to have to watch it” when he returned, this employee did not feel that Mr. Stainfield was making threats. The employee believed Mr. Stain-field was “just talking and bragging.”
Finally, Mr. Stainfield called his former secretary at work on two occasions in March and April. During the first call, he told her that he had won his ease and would be back. He claimed that a lot of people would be in trouble when he returned. On the second occasion, he called to locate a letter dealing with an emergency gas line and a telephone number of a man who did radon testing or asbestos removal.
We cannot conclude that Mr. Stainfield’s limited communications with other employees during this period away from his job, without additional action, are competent, substantial evidence of conduct unbecoming a public employee in this case. It is difficult to assess the effect of Mr. Stainfield’s conduct without considering it in context with the conduct of everyone else at the workplace. It is clear that many employees were not anxious to be supervised by a man that they had described publicly as unprofessional and unreliable. Nevertheless, it is quite clear upon reviewing the record that HRS’s “ability to carry out its assigned mission” was primarily affected by its own interviewing of and obtaining written statements from numerous employees in an effort to dismiss Mr. Stainfield a second time, and not by his actions while waiting for HRS to reinstate him.
Accordingly, we reverse the orders dismissing Mr. Stainfield and remand for further proceedings consistent with this opinion.
Reversed and remanded.
PARKER, A.C.J., and QUINCE, J., concur.